## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WELLS FARGO BANK, N.A., *solely in its capacity as trustee for Soloso CDO 2005-1 Ltd.*,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>HOLDCO ASSET MANAGEMENT, L.P.;<br>HOLDCO OPPORTUNITIES FUND II, L.P.; and<br>OPPORTUNITIES II LTD.,<br><br>　　　　Defendants. | Case No. 16-cv-6356<br><br><br>**COMPLAINT FOR<br><u>DECLARATORY RELIEF</u>** |

Plaintiff Wells Fargo Bank, N.A., solely in its capacity as trustee (the "Trustee") under an indenture (the "Indenture"), dated August 24, 2005, by and among Soloso CDO 2005-1 Ltd., as Issuer ("Soloso"), Soloso CDO 2005-1 Corp., as Co-Issuer, and the Trustee, hereby files this action for declaratory judgment, seeking to resolve a controversy that has arisen between the Trustee and Defendants HoldCo Opportunities Fund II, L.P., Opportunities II Ltd., and HoldCo Asset Management, L.P. (collectively, "HoldCo").  Pursuant to Federal Rule of Civil Procedure 57, the Trustee requests an expedited hearing because the controversy poses an immediate and ongoing harm to the Trustee and Soloso, and the resolution of this action requires a legal determination of the parties' rights based on undisputed facts.

## INTRODUCTION

1.　Pursuant to an order entered by the Honorable Laura T. Swain on October 26, 2015 in a related action,[1] the Trustee is in the process of liquidating the assets of Soloso—which consist of various securities—in a series of public auctions and private sales.  At one such

---

[1]　Memorandum Opinion and Order, *Lansuppe Feeder, LLC v. Wells Fargo Bank, N.A.*, No. 1:15-cv-07034 (S.D.N.Y. Oct. 26, 2015) (Dkt. # 95).

auction held on January 21, 2016 (the "Auction"), five of the securities that were put up for sale did not sell because the bids received on those securities did not meet or exceed the reserve prices set in advance of the Auction.  The auction agent retained by the Trustee did not accept those bids, and notified the bidders that the bids had not been accepted and that the securities would not trade.

2.      Defendant HoldCo claims that it was the winning bidder for three securities that did not trade in the Auction (the "Subject Securities").[2]  HoldCo further claims that, notwithstanding the fact that the bids allegedly submitted on its behalf did not meet the reserve prices set in advance of the Auction, the Trustee is legally obligated to sell the Subject Securities to HoldCo for the prices bid.

3.      For more than six months since the Auction, HoldCo has repeatedly threatened to commence legal proceedings against the Trustee and others if the Trustee does not sell HoldCo the Subject Securities.  HoldCo has even gone so far as to argue that it already has legal title to the Subject Securities, and that the Trustee and other parties may be found liable for breach of contract and related torts if the Trustee does not deliver the Subject Securities.  The Trustee believes HoldCo's claims lack merit, and that the Trustee is not required to sell the Subject Securities to HoldCo.  Moreover, the Trustee does not believe it is required to sell the Subject Securities to HoldCo at an unreasonably low price that is materially less than the reserves set in advance of the Auction.  Nevertheless, these threats of litigation have impaired the Trustee's ability to complete the court-ordered liquidation of Soloso's assets, and negatively affected the marketability of the Subject Securities.  Therefore, in order to resolve this dispute, and dispel any

---

[2]      The Subject Securities are $15,000,000 in original principal amount of trust preferred securities issued by MB Financial Capital Trust II (the "MB Asset"), $10,000,000 in original principal amount of trust preferred securities issued by Arrow Capital Statutory Trust III (the "Arrow Asset"), and $10,000,000 in original principal amount of trust preferred securities issued by SWBT Statutory Trust II (the "SWBT Asset").

US.107254062.06

potential cloud on the title of the Subject Securities that HoldCo seeks to create, the Trustee seeks a judicial declaration that:  (1) no contract for sale of the Subject Securities was formed as a result of the Auction; (2) HoldCo has no right or interest in the Subject Securities; and (3) HoldCo has no cause of action against the Trustee, Soloso, Lansuppe Feeder, LLC ("Lansuppe"), Dock Street Capital Management LLC ("Dock Street"), or any of their respective agents or affiliates in connection with the Auction.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this declaratory judgment action pursuant to the Edge Act, 12 U.S.C. § 632, because the Trustee is a national banking association and this action arises out of transactions involving the Trustee's international banking and/or financial operations.  *See Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 712 F. 3d 775, 780 (2d Cir. 2013).  Specifically, this action arises out of the Trustee's contractual duties as a service provider to Soloso, which is a limited liability company incorporated under the laws of the Cayman Islands.

5.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

6.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b), because, upon information and belief, Defendants HoldCo Opportunities Fund II, L.P. and HoldCo Asset Management, L.P. have their principal places of business in this District, Opportunities II Ltd. conducts substantial business in New York, and the facts at issue in this declaratory judgment action arose in this District.

US.107254062.06

## THE PARTIES

7.      Plaintiff Wells Fargo Bank, National Association is a national banking association with its main office in Sioux Falls, South Dakota.

8.      Defendant HoldCo Asset Management, L.P. is, upon information and belief, a Delaware limited partnership having its principal place of business in New York, New York. HoldCo Asset Management, L.P., according to its website and together with its affiliates, manages approximately $400 million in committed capital.

9.      Defendant HoldCo Opportunities Fund II, L.P. is, upon information and belief, a Delaware limited partnership having its principal place of business in New York, New York.

10.     Defendant Opportunities II Ltd. is, upon information and belief, a company incorporated under the laws of the Cayman Islands.  On information and belief, Opportunities II Ltd. conducts substantial business in New York, and operates by and through HoldCo Asset Management, L.P., which maintains its principal place of business in New York, New York.

## STATEMENT OF FACTS

### I.    Soloso and the Trust Instruction Proceeding

11.     Soloso is a special purpose vehicle, often referred to as a "collateralized debt obligation" or "CDO."  A CDO raises money by selling notes to investors, and uses the proceeds of those sales to finance the purchase of assets.  The proceeds of those assets are used to fund the principal and interest payments owed to noteholders.  The assets also serve as collateral that secures the noteholders' investment.  The Indenture is Soloso's principal governing agreement.

12.     On September 8, 2015, Lansuppe commenced a trust instruction proceeding in the United States District Court for the Southern District of New York against the Trustee and Soloso.  *See Lansuppe Feeder, LLC v. Wells Fargo Bank, N.A.*, No. 1:15-cv-07034 (S.D.N.Y.)

4

(the "Trust Instruction Proceeding" or "TIP").  Lansuppe alleged that Soloso experienced an

Event of Default (as defined in the Indenture) in April 2013 when it failed to pay interest owed to

Class A-1 noteholders.  *See* Complaint ¶ 2, *Lansuppe Feeder, LLC v. Wells Fargo Bank, N.A., as*

*trustee for Soloso CDO 2005-1 Ltd.*, No. 1:15-cv-07034 (S.D.N.Y. Sept. 8, 2015) (Dkt. #1).

Lansuppe further alleged that, as the holder of more than two-thirds of the Class A-1 notes issued

by Soloso, it had the right to direct the Trustee to liquidate the collateral held by Soloso, and had

issued such a direction.  *See id.* ¶¶ 28-30.  Lansuppe sought a judicial instruction from the court

that would compel the Trustee to comply with this direction.  *See id.* ¶ 55.

13.     On October 26, 2015, the court in the Trust Instruction Proceeding entered a

Memorandum Opinion and Order granting partial summary judgment in favor of Lansuppe (the

"Liquidation Order"), stating in relevant part:

> Lansuppe's motion for summary judgment is granted insofar as it
> seeks an instruction from this Court that the Trustee liquidate the
> assets of the Trust Estate.  The Trustee is hereby authorized and
> directed to liquidate the assets of the Trust Estate in accordance
> with the provisions of the Indenture.  Such assets are to be held,
> pending further order of the Court, in a manner designed to
> preserve their value.  The Trustee shall not be held liable to any
> Noteholder or other third party for any actions taken in compliance
> with this Memorandum Opinion and Order.

Liquidation Order at 12, *Lansuppe Feeder, LLC v. Wells Fargo Bank, N.A.*, No. 1:15-cv-07034

(S.D.N.Y. Oct. 26, 2015) (Dkt. # 95).

## II.  The Liquidation Process

14.     After the entry of the Liquidation Order, the Trustee, following consultation with

Lansuppe, proceeded to retain non-party Dock Street Capital Management LLC ("Dock Street"),

a liquidation agent with experience liquidating CDO assets.  On November 18, 2015, the Trustee

provided notice to Soloso, its noteholders, and other parties required to receive notice under the

Indenture, informing them of the forthcoming disposition of assets.

US.107254062.06

15.   On November 20, 2015, the Trustee issued a Notice of Public Sale and Invitation to Bid (the "Invitation to Bid," attached hereto as "Exhibit 1") to potential bidders and other parties, which stated, "You are officially invited to bid on the collateral described below. . . ." Exhibit 1.  The Invitation to Bid identified the assets to be sold, and informed potential bidders that offers would be solicited in five separate auctions scheduled throughout December 2015 and January 2016.  The Invitation to Bid expressly provided:

> The Trustee reserves the right to reject any bid which it deems to have been made by a bidder which is unable to satisfy the requirements imposed by the Trustee upon prospective bidders in connection with the Sales or to whom in the Trustee's sole judgment a Sale may not lawfully be made.  **The Trustee shall not be obligated to make any Sale** and reserves the right to sell all or a part of the Collateral at a subsequent public or private Sale.

Exhibit 1 § 3.a (emphasis added).  By this language, the Trustee made clear it was not bound to sell any of the collateral but sought bids at each scheduled auction.

16.   The Invitation to Bid required, among other things, that bids be irrevocable and unconditional and that bidders keep them open for three hours to give Dock Street sufficient time to review the various bids.  *See* Exhibit 1 § 3.k.  The Invitation to Bid further provided that "[t]he Trustee will accept bids only from such of those persons to whom in its sole judgment a Sale may lawfully be made.  Any person submitting a bid is hereby notified that (i) the Collateral must be acquired for the account of such bidder and not with a view to resale or distribution. . . ." *Id.* § 3.g

17.   The Invitation to Bid also informed potential bidders that, "[b]y submitting a bid, the bidder agree[d] to be bound by the terms and conditions, representations and warranties of this Notice of Public Sale and Invitation to Bid." *Id.* § 3.i.  The Invitation to Bid indicated,

> THE COLLATERAL WILL BE OFFERED AND SOLD BY THE TRUSTEE ON AN "AS IS AND WHERE IS" BASIS, AND WITHOUT ANY REPRESENTATIONS OR WARRANTIES

US.107254062.06

> (WHETHER EXPRESSED OR IMPLIED) OF ANY KIND
> MADE BY ANY SECURED PARTY, THE TRUSTEE, OR ANY
> OTHER PERSON ACTING FOR OR ON BEHALF OF THE
> TRUSTEE, AND WITHOUT ANY RECOURSE WHATSOEVER
> AGAINST ANY SUCH PERSON.

*Id.* § 3.s (emphasis in original).

18.     In addition, potential investors interested in bidding on a security were required to sign and submit an "Investor Representations and Confidentiality Agreement."  *See* Exhibit 1 at "Exhibit A."  In this document, the signers represented, *inter alia*, that they were sophisticated investors who had "reviewed all necessary materials" in connection with the auction, and any bids they submitted would be "for the account of the bidder and not with a view to resale or distribution. . . ."  *Id.*

19.     The first four scheduled auctions, including the Auction, took place as noticed. Certain collateral did not sell during the four scheduled auctions, either because the Trustee withdrew the collateral from sale before the auction date, or because the bids received on the auction date did not meet or exceed the reserve prices established in advance of the relevant auction.

## III.   The Auction Held on January 21, 2016

20.     The present action arises from the Auction held on January 21, 2016.  The Trustee, in consultation with Lansuppe, employed reserve prices for this Auction, as a protection against the collateral selling for an unduly low price.  These reserve prices were communicated to Dock Street in writing and in advance of the Auction.

21.     Five of the securities put up for sale at the Auction, including the Subject Securities, did not trade, because the bids received on those securities were lower than the reserve prices.  On January 21, 2016, Dock Street notified the bidders for those five securities

that their bids had not met the reserve levels and had not been accepted, and that the securities would not trade.  Those five securities were not sold at the Auction.

22.   HoldCo did not bid on the Subject Securities.  The bidders included Guggenheim Securities LLC ("Guggenheim"), which bid 41.53% of face value on the Arrow Asset and 43.48% of face value on the SWBT Asset, and Sandler O'Neill & Partners, L.P. ("Sandler"), which bid 40.52% of face value on the MB Asset.

23.   As a precondition to participating in the Auction, both Guggenheim and Sandler had executed the "Investor Representations and Confidentiality Agreement," in which they represented and warranted that any bids they submitted were being made "for the account of the bidder and not with a view to resale or distribution. . . ."   Exhibit 1 at "Exhibit A."   When Guggenheim and Sandler submitted the bids in writing, they made no indication to Dock Street that they were bidding on anyone's account but their own.

24.   On January 22, 2016 and January 26, 2016, the Trustee received letters from an attorney purporting to represent the "winning" bidders for one or more of the Subject Securities. The attorney did not disclose the identities of his clients, but they were later revealed to be HoldCo.  Thereafter, HoldCo asserted that the bids submitted by Guggenheim and Sandler had been made on HoldCo's behalf.  However, as set forth above, Guggenheim and Sandler had explicitly represented that they were bidding on their own accounts.

25.   HoldCo argued that by submitting the highest bids (other than the reserves) on the Subject Securities through its alleged agents, it had created a binding sales contract between itself and the Trustee.  HoldCo asserted that the Trustee was obligated to sell the Subject Securities to HoldCo, notwithstanding the fact that the bids submitted by Guggenheim and Sandler were substantially lower than the reserve prices established in advance of the Auction.

26.   HoldCo's argument appeared to be that because the existence of reserve prices was not disclosed in the Invitation to Bid, this supposedly meant that the Auction was conducted "without reserve" and that Guggenheim and Sandler's bids created binding contracts obligating the Trustee to convey the Subject Securities to HoldCo.

27.   HoldCo's position contradicts the well-established legal principle that "an auction sale is not 'without reserve' unless expressly so announced."  7 N.Y. Jur. 2d Auctions and Auctioneers § 3 (2015); Restatement (Second) of Contracts § 28 (1981) ("At an auction, unless a contrary intention is manifested . . . the auctioneer invites offers from successive bidders which he may accept or reject.").  Holdco's position also contradicts the terms of the Invitation to Bid.

28.   For more than six months following the Auction, HoldCo has repeatedly threatened to file a lawsuit against the Trustee and others if the Trustee does not sell HoldCo the securities for the prices Guggenheim and Sandler bid at the Auction.  Specifically, HoldCo has threatened to bring claims against the Trustee and others alleging breach of contract and related torts.

29.   HoldCo most recently threatened litigation on July 13, 2016.  In an email to the Trustee and others, HoldCo again asserted that it "acquired" the Subject Securities at the Auction, and reserved all "rights and remedies."  HoldCo further claimed that its failure to assert or enforce such "rights and remedies" to date should not be construed as a waiver by HoldCo, and that HoldCo would not "consent to" or "recognize" the sale of the Subject Securities to any person or entity other than HoldCo.

30.   Despite these persistent threats, HoldCo has not instituted any legal proceedings relating to the Subject Securities.  However, these threats of litigation concerning the Subject Securities are impairing the Trustee's ability to complete the disposition of Soloso's assets

US.107254062.06

pursuant to the Liquidation Order and the Indenture.  HoldCo may also attempt to interfere with any sale noticed by the Trustee, which would negatively impact the marketability of the Subject Securities and the Trustee's ability to comply with the Liquidation Order.

## COUNT I—DECLARATORY JUDGMENT

31.   The Trustee repeats the allegations in the preceding paragraphs.

32.   The Trustee disputes HoldCo's position on several grounds.  First, none of the bids on the Subject Securities met the reserve prices set in advance of the Auction, and no bids were accepted by Dock Street or the Trustee.

33.   Second, the Invitation to Bid expressly provided that "[t]he Trustee shall not be obligated to make any Sale and reserves the right to sell all or a part of the Collateral at a subsequent public or private Sale."  Exhibit 1 at § 3.a.  In declining to accept bids on the Subject Securities, the Trustee exercised its absolute right not to accept these offers and create binding contracts.

34.   Third, if the bids submitted by Guggenheim and Sandler were actually being made on behalf of HoldCo, then those bids violated "the requirements imposed by the Trustee upon prospective bidders," and the Trustee reserved an absolute right to reject any such bids.  *Id.*

35.   Therefore, HoldCo's persistent claims that it has a legal right to the Subject Securities and that the Trustee cannot refuse to sell them to HoldCo are without merit.

36.   An actual and justiciable controversy exists between the parties regarding the legal consequences of the Auction.  The controversy is of sufficient immediacy and reality to warrant declaratory relief under 28 U.S.C. § 2201, because it is interfering with the disposition of the Subject Securities and impairing the Trustee's ability to comply with the Liquidation Order and the Indenture.

US.107254062.06

## PRAYER FOR RELIEF

WHEREFORE, the Trustee respectfully requests an expedited hearing of this action pursuant to Federal Rule of Civil Procedure 57, and hereby demands judgment against HoldCo as follows:

a)  A judicial declaration that no contract for sale of any of the Subject Securities was formed as a result of the Auction, HoldCo has no right or interest in the Subject Securities, and HoldCo has no cause of action against Soloso, the Trustee, Lansuppe, Dock Street, or any of their respective agents or affiliates in connection with the Auction or the Subject Securities;

b)  An award of the Trustee's attorneys' fees and costs; and

c)  Such other and further relief as the Court may deem just and proper.

Dated: August 10, 2016                    Respectfully submitted,

 *s/ Michael M. Krauss*
Michael M. Krauss
Peter J. Farrell (*pro hac vice forthcoming*)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
Facsimile: (612) 766-1600
michael.krauss@faegrebd.com
peter.farrell@faegrebd.com

*Attorneys for Wells Fargo Bank, NA, solely in its capacity as trustee for Soloso CDO 2005-1 Ltd.*

US.107254062.06