# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WELLS FARGO BANK, N.A., *solely in its capacity as trustee for Soloso CDO 2005-1 Ltd.*, | Case No. 16-cv-6356 (KBF) |
| Plaintiff, | |
| v. | |
| HOLDCO ASSET MANAGEMENT, L.P; HOLDCO OPPORTUNITIES FUND II, L.P; and OPPORTUNITIES II LTD., | |
| Defendants. | |

-------------------------------------------------------x

HOLDCO ASSET MANAGEMENT, L.P; HOLDCO OPPORTUNITIES FUND II, L.P; and OPPORTUNITIES II LTD.,

Counterclaim Plaintiffs,

v.

WELLS FARGO BANK, N.A.

Counterclaim Defendant.

## THE HOLDCO ENTITIES' MEMORANDUM OF LAW IN OPPOSITION TO WELLS' MOTION TO DISMISS

**BROWN MCCORMICK LLC**
Seth B. McCormick (SM-7384)
5315 N. Clark Street, Suite 601
Chicago, IL 60640
Phone: (917) 398-2343
Email: seth@brownlegal.net

-and-

**JEFFREY D. STERNKLAR LLC**
Jeffrey D. Sternklar
225 Franklin Street, 26th Floor
Boston, Massachusetts 02110
T: (617) 396-4515

*Attorneys for Holdco Asset Management, L.P.; HoldCo Opportunities Fund II, L.P. and Opportunities II Ltd.*

i

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT…..……………………………………….…… 1

LEGAL STANDARD...……………………………………………………… 2

ARGUMENT……………………………………………………………… 3

I.   The HoldCo Entities' Contract-Based Counterclaims ………………………… 3

  a.   The Wells MTD With Respect to Counts 1-3 of the Counterclaims is Moot ……. 3

  b.   Count 1 (Declaratory Relief)………………………………..………….. 4

  c.   Count 2 (Breach of Contract)……………………………….…………… 6

  d.   Count 3 (Specific Performance)………………………………………… 6

II.  The HoldCo Entities' Tort-Based Counterclaims………………………………….. 7

  a.   Economic Loss…………………………………………………… 7

  b.   Count 6 (Breach of Duty to Conduct a Fair Auction)………..……………… 9

  c.   Count 7 (Negligent Misrepresentation)……………………………………… 11

  d.   Count 4 (Conversion) and Count 5 (Replevin)………………………....…… 15

III. Request for Leave to Amend…………………………………………….. 17

CONCLUSION…………………………………………………….……… 17

# **TABLE OF AUTHORITIES**

## **Cases**

1. *Lewis v. Swicki*, 629 Fed. Appx. 77, 80 (2d Cir. 2015)…………………………………....2

2. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993)………....………….2-3

3. *Official Cmte. Of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, L.L.P.*,322 F.3d 147, 158 (2d Cir. 2003)…..…………………………………...…………3

4. *In re Gildan Activewear, Inc. Sec. Litig.*, 636 F. Supp. 2d 261, 268 n.3 (S.D.N.Y. 2009)…..3

5. *Barrett v. Harrington*, 130 F.3d 246, 252-53 (6th Cir. 1997)……………………….………3

6. *Bellman v. I3Carbon, LLC*, 2015 U.S. Dist. LEXIS 76420, * 22 (D. Colo. 2015) …….…..4

7. *Kane v. Iowa Dep't of Human Servs.*, 955 F. Supp. 1117, 1121 n.1 (N.D. Ia. 1997)……….4

8. *Arista Records LLC v. Usenet.com, Inc.*, 2008 WL 4974823, at *3 (S.D.N.Y. Nov. 24, 2008)………….…………………………………………………………………...…….4-5

9. *Smith v. BarnesandNoble.com, LLC*, 2014 U.S. Dist. LEXIS 35623, at *4 (S.D.N.Y. 2014)……………………………………………………………....………..…4-5

10. *Marvel Worldwide, Inc. v. Kirby*, 756 F. Supp. 2d 461, 467-68 (S.D.N.Y. 2010)…… …..5-6

11. *Ferring B.V. v. Fera Pharms., LLC*, 2014 U.S. Dist. LEXIS 142670, at*14 (E.D.N.Y. 2014)………………………………………………………………………………..6

12. *Leach v. Ross Heater & Mfg. Co.*, 104 F.2d 88, 91-91 (2d Cir. 1943)………………….…6

13. *RJ Capital, S.A. v. Lexington Capital Funding III, Ltd.*, 2011 WL 3251554 at *16 (S.D.N.Y. 2011)…………………………………………………..…………………..6

14. *Pace v. Schwartz*, 680 F. Supp. 2d 591, 594 (S.D.N.Y. 2010)………………………….7

15. *Tierney v. Omnicom Group*, 2007 U.S. Dist. LEXIS 50435, at *29-30 (S.D.N.Y. 2007)……………………………………………………………………………………7

16. *Apple Records, Inc. v. Capital Records, Inc.*, 137 A.D2d 50, 55, 529 N.Y.S.2d 279, 281-82 (N.Y. App. Div. 1988) …………………………………………….……………7

17. *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265 (S.D.N.Y. 2004)…………………………………………………………………………8, 12-13

18. *Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 246 (S.D.N.Y. 2006)……………………………………………………………………………….8-9

19. *Valeo Engine Cooling v. Guy F. Atkinson Co.*, 240 A.D.2d 176, 177, 658 N.Y.S.2d 285, 286 (N.Y. App. Div. 1997) ……………………………………………………………9-11, 13-14

20. *Solow v. Conseco Inc.*, 2008 U.S. Dist. LEXIS 9234, *8 n.6 (S.D.N.Y. 2008)…………………………………………………………………………………10-13

21. *Nathanson v. Grand Estates Auction Co.*, 2010 U.S. Dist. LEXIS 124720, *15 (E.D.N.Y. 2010) ……………………………………………………………………………10-11

22. *Hydro Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8 (2d Cir. 2000)…………………………………………………………………………………………11

23. *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486 (S.D.N.Y. 2013)………………………………………………………………………………11-12, 14

24. *HSH Nordbank AG v. UBS AG*, 95 A.D.3d 185, 941 N.Y.S.2d 59 (N.Y. App. Div. 2012)…………………………………………………………………………………………12

25. *JPMorgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393 (S.D.N.Y. 2004) ……………12, 15

26. *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263, 652 N.Y.S.2d 715, 719 (N.Y. 1996) ………12-13

27. *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788-89 (2d Cir. 2003)……………13

28. *Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 28 (S.D.N.Y. 2009) …………………………………………………………………………14

29. *Musalli Factory for Gold & Jewellry Co. v. JPMorgan Chase Bank, N.A.*, 328 Fed. Appx. 107 (2d Cir. 2010)…………………………………………………………………………..14

30. *Usov v. Lazar,* 2013 WL 3199652, at *6-8 (S.D.N.Y. 2013)………………………… ……15

31. *Mosallem v. Matrix Int'l Logistics, Inc.*, 2004 U.S. Dist. LEXIS 625 (S.D.N.Y. 2004) ..…16

32. *Fabry's S.r.L. v. IFT Int'l, Inc.*, 2003 U.S. Dist. LEXIS 5897 (S.D.N.Y. 2003)……….. …16

33. *Cortec Indus., Inc. v. Sum Holding LP*, 949 F.2d 42, 48 (2d Cir. 1991)……………………17

**Statutes and Rules**

1. Fed.R.Civ.Proc. 12(d)…………………………..……………………………………4, 6

2. Fed.R.Civ.Proc. 56………………………………………………………………………6

3. Fed.R.Civ.Proc. 12(b)(6)……………..…………………………………………………6

4. Fed. R.Civ.P. 15(a)(2)…………………………………………………………......…17

iv

Defendants/Counterclaim Plaintiffs HoldCo Asset Management, L.P. ("HoldCo"), as manager and power of attorney for HoldCo Opportunities Fund II, L.P. ("HoldCo II") and Opportunities II Ltd. ("Opps II," and together with HoldCo and HoldCo II, the "HoldCo Entities"), submit this memorandum of law in opposition to the motion to dismiss (the "Wells MTD") filed by Wells Fargo Bank, N.A. ("Wells").

## PRELIMINARY STATEMENT

Enough papers have been filed with this Court that a recitation of the facts and respective arguments is not needed. This Court knows this dispute arose from an auction held on January 21, 2016 (the "January Auction").[1] This Court also knows this case began when Wells filed the Complaint for Declaratory Relief (the "Complaint") on August 10, 2016, and that, on September 22, 2016, before the HoldCo Entities answered the Complaint, Wells filed its Motion for Summary Judgment [Docket No. 24] (the "Wells MSJ"). The Wells MSJ sought a ruling, among other things, that no contract was formed in the January Auction.

On September 30, 2016, eight days after the filing of the Wells MSJ, the HoldCo Entities filed the Answer of the HoldCo Entities to the Complaint for Declaratory Relief of Wells with Counterclaims (the "Counterclaims" or "CC"). In the Counterclaims, the HoldCo Entities asserted claims for: (1) declaratory judgment; (2) breach of contract; (3) specific performance; (4) conversion; (5) replevin; (6) breach of the duty to conduct a fair auction; and (7) negligent misrepresentation.

On October 11, 2016, the HoldCo Entities filed their own motion for summary judgment [Docket No. 47] seeking judgment on Counts 1, 2 and 3 of the Counterclaims (the "Hold MSJ")

---

[1] All capitalized terms used but not defined herein shall have the meanings given to them in the Counterclaims.

and responded to the Wells MSJ [Docket No. 42] (the "HoldCo Response").[2] Wells then filed its consolidated reply and response to the HoldCo MSJ and HoldCo Response [Docket No. 56] on October 25, 2016 (the "Wells Response"). On November 4, 2016, the HoldCo Entities' filed their reply to Wells' response (the "HoldCo Reply") [Docket No. 68]. The Wells MSJ, the HoldCo MSJ, the HoldCo Response, the Wells Response and the HoldCo Reply are collectively referred to herein as the "MSJ Papers."

Yet, despite the fact Wells filed the Complaint and asked the Court in the Wells MSJ to determine whether a contract existed, Wells is now seeking to dismiss the HoldCo Entities' counterclaims because "no contract of sale exists." Wells presumes too much. Each of Wells' arguments fails, and the Wells MTD should be denied for at least two reasons:

1. The Wells MTD is moot with respect to Counts 1, 2 and 3 in light of the MSJ Papers, which go beyond the matters averred in the Wells MTD.

2. The HoldCo Entities' tort counterclaims are not simply repackaged contract claims. Instead, each tort counterclaim asserts a claim separate and distinct from the contract claims and seeks damages distinct from contract damages.

## LEGAL STANDARD

A motion to dismiss made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure should be denied "unless it appears beyond doubt that the [movant] can prove no set of facts in support of his claim which would entitle him to relief." *Lewis v. Swicki*, 629 Fed. Appx. 77, 80 (2d Cir. 2015) (citations omitted). For purposes of a motion to dismiss pursuant to Rule 12(b)(6), this Court must accept all allegations in the Counterclaims as true and all reasonable inferences should be drawn in the HoldCo Entities' favor. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d

---

[2] In support of the HoldCo MSJ and the HoldCo Response, the HoldCo Entities also filed the Affidavit of Julie Veltman in Support of the HoldCo Entities' Motion for Summary Judgment and Opposition to Wells' Motion for Summary Judgment (the "Veltman Affidavit") and the Affidavit of Vikaran Ghei in Support of the HoldCo Entities'' Motion for Summary Judgment and Opposition to Wells' Motion for Summary Judgment (the "Ghei Affidavit").

2

Cir. 1993). "A court's task in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might offered in support thereof." *Official Cmte. Of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, L.L.P.*, 322 F.3d 147, 158 (2d Cir. 2003) (internal citations omitted). Further, "[i]n deciding a motion to dismiss, a court may consider documents attached as exhibits to the complaint or incorporated into the complaint be reference, documents that are integral to the plaintiff's claims, even if not explicitly incorporated by reference, and matters of which judicial notice may be taken." *In re Gildan Activewear, Inc. Sec. Litig.*, 636 F. Supp. 2d 261, 268 n.3 (S.D.N.Y. 2009).

## ARGUMENT

### I.   The HoldCo Entities Contract-Based Counterclaims

#### a.   The Wells MTD With Respect to Counts 1-3 of the Counterclaims is Moot

Prior to filing the Wells MTD, Wells filed the Wells MSJ, which sought summary judgment as to whether Wells was contractually obligated to deliver the Subject Collateral. The HoldCo Entities filed the HoldCo MSJ seeking summary judgment on Counts 1, 2 and 3 of the Counterclaims. As made clear in the HoldCo MSJ and HoldCo Response, Wells and the HoldCo Entities formed a contract in the January Auction based on the terms of the November Notices, custom and usage and applicable law. The HoldCo Entities also provided the Veltman Affidavit, which provided expert testimony as to the custom and usage in CDO liquidations.[3]

Consequently, Wells has mooted the Wells MTD with respect to Counts 1, 2 and 3.[4] *See, Barrett v. Harrington*, 130 F.3d 246, 252-53 (6th Cir. 1997) ("In this case, Defendant filed her summary judgment motion and her motion to dismiss simultaneously. . . The court then acted in

---

[3] The HoldCo Entities incorporate each of the MSJ Papers herein by reference.

[4] As set forth in Section II.d *infra*, the HoldCo Entities agree Count 3 (Specific Performance) is a remedy rather than a cause of action but are requesting that this Court consider it plead as a remedy for purposes of the Wells MTD.

accordance with Rule 12 by rendering the motion to dismiss moot, as a summary judgment motion was already pending addressing the same issues."); *see also Bellman v. I3Carbon, LLC*, 2015 U.S. Dist. LEXIS 76420, * 22 (D. Colo. 2015) ("I am not inclined to consider a Rule 12(b)(6) motion at the same time that I am considering summary judgment motions filed by the same parties."); *Kane v. Iowa Dep't of Human Servs.*, 955 F. Supp. 1117, 1121 n.1 (N.D. Ia. 1997) ("[I]n this case, determination of the motion for summary judgment will effectively moot the motion to dismiss for failure to state a claim. . . [because the issues in the motion to dismiss] are also raised in the motion for summary judgment. . . . If the court grants. . . the motion for summary judgment. . . it will have no need to reach the same issue under the motion to dismiss. . . ."); Fed.R.Civ.Proc. 12(d).

For the foregoing reasons, this Court should deny the Wells MTD with respect to Counts 1, 2 and 3 of the Counterclaims as moot.

### b. Count 1 (Declaratory Relief)

If the Court does not find the Wells MTD moot, then it should still deny Wells' request to dismiss Count 1. In the Wells MTD, Wells argues that the HoldCo Entities' declaratory relief counterclaim should be stricken because it is a "mirror image" of Wells' and does not represent an "independent case or controversy that would survive dismissal of [Wells'] claims." Wells MTD, at 7-8 (citing *Arista Records LLC v. Usenet.com, Inc.*, 2008 WL 4974823, at *3 (S.D.N.Y. Nov. 24, 2008)). However, "[u]nder Second Circuit precedent, 'a counterclaim is not duplicative or redundant if it asserts an independent case or controversy that survives the dismissal of plaintiff's claim." *Smith v. BarnesandNoble.com, LLC*, 2014 U.S. Dist. LEXIS 35623, at *4 (S.D.N.Y. 2014) (citations omitted).

The declaratory judgment counts are not duplicative. If Wells' declaratory judgment claim were dismissed or withdrawn, the HoldCo Entities' declaratory judgment action would survive as a justiciable, independent claim and cause of action. *Id*. Wells sought a ruling that "no contract for

4

sale. . . was formed as a result of the [January] Auction" and that the "HoldCo [Entities have] no right or interest in the Subject [Collateral]." Complaint, at pg. 11. The HoldCo Entities, however, in Count 1 sought a broader ruling and are asking this Court to rule that (i) the January Auction was an "'absolute auction' and without reserve by its express terms, and, in the alternative, under the usage of trade;" (ii) that Opps 1 and HoldCo II were the "Best Bidders" and the winning bidders; (iii) an enforceable contract arose in the January Auction; and (iv) the HoldCo Entities are entitled to delivery of the Subject Collateral and any proceeds received thereon in consideration of their bids. CC, ¶ 141. As such, although both parties seek a determination whether a contract was formed, the HoldCo Entities also ask this Court to rule specifically that the January Auction was an absolute auction and that the HoldCo Entities are entitled to delivery of the Subject Collateral and any proceeds.

The HoldCo Entities' declaratory judgment action is thus materially different than Wells'. In this situation, courts have declined to dismiss a declaratory judgment action pursuant to Rule 12(f) because there is not a "complete identity of factual and legal issues between the complaint and counterclaim." *See Smith*, 2014 U.S. Dist. LEXIS 35623, *3; *Arista*, 2008 WL 4974823, at *8-10 (distinguishing dueling counterclaims in which both parties sought declarations that a party had infringed or not infringed from counterclaims in which one party also sought a declaration that the underlying patent was invalid); *see also Marvel Worldwide, Inc. v. Kirby*, 756 F. Supp. 2d 461, 467-68 (S.D.N.Y. 2010):

> "Here, the first counterclaim is not duplicative or redundant of Marvel's claim for declaratory judgment. Marvel is correct that the validity of the Termination Notices hinges on the work-for-hire status of the Kirby Works. If Marvel wins, the Termination Notices will be invalid. But the Termination Notices could be invalid for other reasons as well. . . . By securing a declaration that the notices are valid, the Kirbys protect themselves from future litigation in the event that Marvel loses the work-for-hire live dispute. Thus, the first counterclaim alleges an independent case or controversy separate from Marvel's claim."

*Ferring B.V. v. Fera Pharms., LLC*, 2014 U.S. Dist. LEXIS 142670, at*14 (E.D.N.Y. 2014) (citing *Leach v. Ross Heater & Mfg. Co.*, 104 F.2d 88, 91-91 (2d Cir. 1943) ("[I]f Plaintiff were to withdraw its allegations. . . a case or controversy would still exist. . . to confirm that Defendant would not be subjected to a similar lawsuit. . . in the future."). Because Wells and the HoldCo Entities seek different relief, Wells' motion to dismiss Count 1 should be denied.

### c.  Count 2 (Breach of Contract)

If the Court does not find the Wells MTD moot, then it should still deny Wells' request to dismiss Count 2. As noted above, in the MSJ Papers, each of Wells and the HoldCo Entities fully briefed the issue of whether a contract was formed in the January Auction and whether Wells breached it. The HoldCo Entities incorporate each of the arguments they made in such papers herein by reference. Ultimately, the question of whether Wells breached its contractual obligations is before this Court pursuant to Rule 56 of the Federal Rules of Civil Procedure, and there are no grounds to dismiss Count 2 of the Counterclaims pursuant to Rule 12(b)(6). Wells motion to dismiss Count 2 should be therefore denied on its merits or treated as a motion for summary judgment pursuant to Rule 12(d) of the Federal Rules of Civil Procedures and deemed moot in light of the MSJ Papers.

### d.  Count 3 (Specific Performance)

In the Wells MTD, Wells states that under New York law "specific performance is an equitable remedy for a breach of contract rather than a separate cause of action." Wells MTD, at 12 (citing *RJ Capital, S.A. v. Lexington Capital Funding III, Ltd.*, 2011 WL 3251554 at *16 (S.D.N.Y. 2011). The HoldCo Entities agree that Count 3 (Specific Performance) is a remedy. Rather than simply dismissing Count 3, the HoldCo Entities request that this Court consider Count 3 as a remedy for breach of the contract formed in the January Auction or in the alternative grant the HoldCo Entities leave to replead Count 3 as a remedy. *See Pace v. Schwartz*, 680 F. Supp. 2d

591, 594 (S.D.N.Y. 2010) ("Schwartz also moved to dismiss the Paces' claim for a permanent injunction on the ground that 'injunction is a remedy and not a separate cause of action.' This is true but irrelevant. The fact that plaintiffs have pleaded their request for injunctive relief as a separate claim rather than as a part of the prayer of relief in no way disentitles them to seek injunctive relief."); *Tierney v. Omnicom Group*, 2007 U.S. Dist. LEXIS 50435, at \*29-30 (S.D.N.Y. 2007) (allowing movant to replead claim for specific performance as a remedy).

## II.     The HoldCo Entities Tort-Based Counterclaims

Wells argues that Counts 4, 5, 6 and 7 of the Counterclaims are contract claims masquerading as tort claims. Wells bases this argument, in large part, on its belief that the HoldCo Entities seek damages in tort that are duplicative of the benefit of the bargain damages they are seeking in contract. This is not the case. The HoldCo Entities are not repackaging contract claims but are asserting tort claims that, despite arising from the same circumstances, are independent of their contract claims. This is not impermissible nor is it uncommon. *See, e.g., Apple Records, Inc. v. Capital Records, Inc.*, 137 A.D2d 50, 55, 529 N.Y.S.2d 279, 281-82 (N.Y. App. Div. 1988) ("[T]he focus is not. . . on whether the tortious conduct is separate and distinct from the defendants' breach of contractual duties, for it has long been recognized that liability in tort may arise from and be inextricably intertwined with that conduct which also constitutes a breach of contractual obligation."). For expediency, Counts 6 and 7 will be discussed first after "economic loss."

### a.   Economic Loss

Wells alleges that each of the HoldCo Entities' tort counterclaims should be dismissed under the "economic loss" rule because the damages sought in each count are "seeking only a benefit of the bargain recovery." Wells MTD, at 15-16 (citing *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 281 (S.D.N.Y. 2004)). As discussed in the case law, however, the "economic loss" rule does not prevent claims seeking tort damages even if those tort

damages overlap with contract damages. Instead, the "economic loss" rule prevents a party from seeking damages in tort that are essentially contractual in nature. *See, e.g., Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 246 (S.D.N.Y. 2006).

As discussed in *Sofi*, the rule prevents a party from recovering twice, once in contract and once in tort, for "future financial harms – as for example, potential lost profits, business opportunities, and earnings from a transaction – that could be anticipated and bargained for in contracts, but ordinarily do not arise in claims of fraud. Damages in the latter case typically look back, and seek to make the injured party whole for monetary outlays actually incurred as a result of the deceitful conduct at issue." *Id.*, n.7. Consequently, the "economic loss" rule does not bar damages for monetary outlays "incurred as a result of the deceitful conduct," like due diligence costs, opportunity costs arising from reliance on the misconduct, and costs associated with protecting oneself against the misconduct, such as legal and other costs. *Id.* ("The damages plaintiffs seek, amounting to compensation for out-of-pocket expenditures incurred as a result of alleged tortious conduct, are distinctly tort damages.").

As discussed below, in asserting their tort counterclaims, the HoldCo Entities are seeking tort damages – compensatory damages (damages incurred *prior* to the January Auction and/or after the January Auction as a result of the seller's breach of its duty) and punitive damages – not contractual, benefit of the bargain damages. CC, ¶¶167 (alleging damages for pecuniary loss, additional costs and expenses, including the costs of litigation); 173; 179 (same); 183 (alleging harm from expenditure of time and resources and incurrence of risk).[5] Further, at this stage of the litigation where the HoldCo Entities are entitled to argue in the alternative, it also does not matter

---

[5] Admittedly, Count 4 also alleges damages for loss of the benefit of the bargain and lost profits and Count 6 also alleges lost profits. However, if the Court finds that the inclusion of those types of damages, in addition to the other damages alleged in Count 4 and Count 6, warrants dismissal, the HoldCo Entities request leave to amend their Counterclaims to address any deficiencies. *See* Section III, *infra*.

if the damages alleged in tort could be recovered in contract as well so long as the damages are tort damages. *Sofi*, 444 F. Supp. 2d at 248 ("[S]ome types of financial injuries. . . conceivably may qualify as both tort and contract damages under appropriate circumstances. . . [Plaintiffs] would be compelled to elect one remedy if they were to prevail on both claims."). Because the HoldCo Entities are not seeking contract damages in Counts 4 through 7, the Wells MTD with respect thereto should be dismissed.

### b.  Count 6 (Breach of the Duty to Conduct a Fair Auction)

Wells alleges Count 6 (Breach of the Duty to Conduct a Fair Auction) fails because the HoldCo Entities did not allege facts required to show a breach of the duty. Wells asserts that a breach of the duty to conduct a fair auction requires (1) an inducement "into 'investing and evaluating'" a sale and (2) a misuse of the bidder's bid. Wells MTD, at 18. These two elements, upon which Wells' hangs its entire argument, are only mentioned in *Valeo* with respect to a claim for unjust enrichment and do not apply to the duty to conduct a fair auction. The entirety of the relevant *Valeo* passage is as follows:

> "Also viable are plaintiffs' causes of action for breach of the duty to hold a fair auction and unjust enrichment. Concerning the former [breach of the duty to conduct a fair auction], while ordinarily an auction entails a 'public sale of property to the highest bidder, conducted by receiving, competitive oral bids', once the parties agreed to a private auction to selected potential purchasers who submitted written bids, the auction had to be conducted fairly pursuant to its terms. Concerning the latter [unjust enrichment], it is sufficient, as plaintiffs allege, that defendants induced them into spending approximately $300,000 investigating and evaluating the subsidiary, and then unfairly used plaintiffs'' offer as a 'foil' to get a higher offer after plaintiffs' offer had been accepted."

*Valeo Engine Cooling v. Guy F. Atkinson Co.*, 240 A.D.2d 176, 177, 658 N.Y.S.2d 285, 286 (N.Y. App. Div. 1997) (citations omitted); *Solow v. Conseco Inc.*, 2008 U.S. Dist. LEXIS 9234, *8 n.6 (S.D.N.Y. 2008) (same); *see also Nathanson v. Grand Estates Auction Co.*, 2010 U.S. Dist. LEXIS

124720, *15 (E.D.N.Y. 2010).[6] Consequently, the elements cited by Wells only speak to unjust enrichment, not the duty to conduct a fair auction, which was correctly pled in the Counterclaims. CC, ¶¶47-50; 176-177).

In addition, the breach of the duty to conduct a fair auction is clearly a tort, and, while it may relate to a contract, it is not contingent on a contract being formed in an auction and the damages for violating the duty are not contract damages. As the *Solow* court made clear, the duty lies even if (unlike in the November Notices) the auction notice had clear language reserving the seller's right not to enter into a contract. *Solow*, 2008 U.S. Dist. LEXIS 9234, *11 ("The reservation of rights cited by Defendants [reserving Defendants' 'sole and absolute discretion' to accept or reject any offer for any reason] would not extend to fraud or an unfair departure from the auction rules, and, accordingly. . . Defendant's motion [to dismiss] is denied."). Further, the duty protects potential bidders against a "sham process" and a violation of the terms of the auction, not a loss of their bargain. *Id*. at *9. Consequently, with respect to Count 6, the HoldCo Entities have a valid cause of action against Wells regardless of whether a contract was formed in the January Auction.

Finally, the damages for a breach of the duty are not "benefit of the bargain" damages but are compensatory (for damages incurred *prior* to the auction and/or after the auction as a result of the seller's breach of its duty) and punitive. *Id.*, at *8 ("Plaintiff alleges. . . he was damaged by expending resources and bidding. . . ."); *see also Nathanson* 2010 U.S. Dist. LEXIS 124720, *15 (same); *Valeo*, 240 A.D.2d at 177, 658 N.Y.S.2d at 286 (finding a cause of action both for breach of contract and duty to conduct a fair auction when plaintiff alleged damages from investigating

---

[6] Wells asserts that *Valeo* is the only case to recognize the duty to conduct a fair auction. In doing so, Wells ignores, *Solow*, a Southern District of New York case which recognizes the duty and allows a party to seek damages for breach of such duty, and the actual holding of *Nathanson*, which recognizes the duty but dismissed the claim for other reasons.

the deal). Consequently, damages arising from a breach of the duty to conduct a fair auction are not duplicative of damages for a breach of contract in that they do not compensate a party for the loss caused by the breach of contract. They compensate a party for the losses incurred as a result of bidding in a "sham auction." The HoldCo Entities properly pled such damages. CC, ¶¶ 99; 179. As such, the Wells MTD with respect to Count 6 should be denied.

### c.  Count 7 (Negligent Misrepresentation)

Wells seeks to dismiss Count 7 (Negligent Misrepresentation) based on two arguments: (i) Wells had no independent duty of care, as a result of a special relationship, to give correct information; and (ii) Wells believes that it disclaimed any responsibility to the HoldCo Entities. Wells further asserts that the damages for Wells' negligent misrepresentations are contract damages. Wells is incorrect.

As an initial matter, the cases Wells cites are inapposite. Each of Wells' cases discusses a misrepresentation concerning financial information about an underlying business, loan or security, which, in the case at bar, is analogous to a misrepresentation about the Collateral. *See generally Hydro Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8 (2d Cir. 2000) (misrepresentation relating to future financial performance of company); *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486 (S.D.N.Y. 2013) (misrepresentations related to issued notes concerning collateral reports, borrowing base certificates and amount of collateral); *HSH Nordbank AG v. UBS AG*, 95 A.D.3d 185, 941 N.Y.S.2d 59 (N.Y. App. Div. 2012) (misrepresentation concerning financial risk of credit default swaps); *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265 (S.D.N.Y. 2004) (misrepresentation of financial condition and solvency of servicer provider); *JPMorgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393 (S.D.N.Y. 2004) (misrepresentation with respect to financial condition of borrower).  In contrast, here, the HoldCo Entities are not alleging that Wells provided faulty information about an asset (the Subject

Collateral), *e.g.* incomplete documentation or faulty financials. They are alleging that Wells misrepresented the *actual* terms of the January Auction by representing, in the November Notices, an auction *without* reserve despite harboring a secret intent to set reserves.

Wells' argument also fails for other reasons.

*First*, Wells had an independent duty of care to the HoldCo Entities, which it breached. As discussed above, under New York law a seller has a duty – as a matter of law – to all bidders in closed auctions, like the January Auction, to conduct the auction fairly and in accordance with its terms, which duty requires an accurate disclosure of the terms of the auction. *See, e.g., Solow*, 2008 U.S. Dist. LEXIS 9234, at *8-11 (allowing a claim when seller "misrepresented the process by which it would" sell the property). This duty changes the relationship between sellers (Wells) and bidders (the HoldCo Entities), and sellers, in such auctions, are not simply engaging in arms' length transactions based on "casual statements and contacts." *See Kimmell v. Schaefer*, 89 N.Y.2d 257, 263, 652 N.Y.S.2d 715, 719 (N.Y. 1996). Instead, sellers are in a "special position of confidence and trust" because New York law "impart[s] a duty on [sellers] to provide correct information" with regard to the terms of the auction. *See EED Holdings*, 387 F. Supp. 2d at 281.

Because sellers – in auctions like the January Auction – have a duty under *Valeo* and *Solow* to provide correct information about the terms of an auction and, as a matter of law, can be relied on to do so, sellers have a "special relationship" to their bidders in these circumstances. *Id.*; *see also Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788-89 (2d Cir. 2003) (describing the "basic requirement of a 'special relationship'" for negligent misrepresentation claims as existing when the defendant is "'in a special position of confidence and trust with the injured party.'") (citing *Kimmell*, 89 N.Y.2d at 263; 652 N.Y.S. 2d at 719). As such, Wells had a duty *not* to run a "sham auction," and this duty entitled the HoldCo Entities to rely on Wells *not* misrepresenting

the terms of the January Auction. Consequently, the HoldCo Entities were entitled to rely on Wells' representations about the terms of the January Auction contained in the November Notices (which established an absolute auction) and that if those terms changed that Wells would comply with its duty and inform bidders of the change in terms. Yet, Wells misrepresented the terms of the January Auction and secretly "set reserves" when, by its express terms, the January Auction was without. This misrepresentation is a clear breach of Wells' independent, common law duty to bidders, like the HoldCo Entities, to conduct a fair auction and is sufficient to support a claim for negligent misrepresentation.

_Second_, the disclaimers cited by Wells[7] do not abrogate this duty or somehow release Wells from its obligation not to misrepresent the terms of the January Auction. Each of the disclaimers (and cases) cited by Wells deal with Wells' obligation to provide information to potential bidders about the Collateral being sold, _not_ Wells' duty to provide accurate information with respect to the terms of the January Auction. Wells MTD, at 16-17; _see also BNP Paribas Mortg. Corp._, 949 F. Supp. 2d at 496, 510 (dismissing claim for negligent misrepresentation based seller's failure to disclose insolvency of issuer of notes when purchaser of notes stated it conducted its own diligence on the issuer). Again, the HoldCo Entities are not alleging that Wells negligently misrepresented the condition of the Collateral; they are alleging that Wells misrepresented the _actual_ terms of the January Auction. Wells did not disclaim its duty to conduct a fair auction or to comply with the disclosed terms of the January Auction.

---

[7] Wells cites the following disclaimers and representations in support of its position: (A) the HoldCo Entities had (i) "sufficient knowledge and experience in business and financial matters to evaluate properly the merits and risks of investments in the Collateral;" (ii) "such access to information concerning the Collateral as such bidder deems necessary to make an informed investment decisions;" and (B) neither Wells "nor any other party" was a "fiduciary or investment advisor." Wells MTD, at 16-17. Each of these representations speak to the sufficiency of disclosure with respect to the Collateral, not the actual terms of the January Auction.

Neither does the purported disclaimer stating that Wells was not "fiduciary or investment advisor" change this duty. The duty to conduct a fair auction is not a fiduciary duty; it is a generalized duty to all bidders in certain auctions, which applies despite the seller in such auctions not being a fiduciary to the bidders. *See generally Valeo*, 240 A.D.2d 176, 658 N.Y.S.2d 285. Further, the fact that Wells was not a fiduciary does not diminish the "special relationship" between the parties because that relationship does not require one party to be a fiduciary to another. *See Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 28 (S.D.N.Y. 2009), aff'd sub nom. *Musalli Factory for Gold & Jewellry Co. v. JPMorgan Chase Bank, N.A.*, 328 Fed. Appx. 107 (2d Cir. 2010) ("[T]he standard of a special relationship in the context of a negligent misrepresentation claim is less rigorous than that of a fiduciary duty. . . ."). Consequently, each disclaimer cited by Wells is inapposite and irrelevant to whether Wells negligently misrepresented the terms of the January Auction.

Finally, like the damages for breach of the duty to conduct a fair auction, the damages arising from Wells' negligent misrepresentations are not duplicative of the HoldCo Entities' contract damages. In the Counterclaims, the HoldCo Entities alleged that they had "been substantially and directly harmed by Wells' negligent misrepresentations because they expended substantial time and resources and incurred substantial risk in bidding in the January Auction based on the representation that the January Auction was an absolute auction." CC, ¶ 185. These types of damages are not contract damages and are not seeking the benefit of the bargain made in the January Auction. Instead, the HoldCo Entities are seeking damages to make themselves whole with respect to the cost, expenditures, and risk incurred in preparing for and bidding in the January Auction, not the damages incurred by Wells' breach of the contract.

14

For the reasons set forth above, the Wells MTD with respect to Count 6 (Negligent Misrepresentation) should be dismissed.

### d. Count 4 (Conversion) and Count 5 (Replevin)

Wells also seeks to dismiss Counts 4 (Conversion) and Count 5 (Replevin) of the Counterclaims. The only argument Wells makes to dismiss these claims is that they seek "to transmogrify the contract claim into one for tort." Wells MTD, at 13, citing *JPMorgan Chase Bank v. Winnick*, 350 F. Supp. 2d at 401 (citations omitted). Wells' argument goes no further than this cursory statement, except to (i) cite, without discussion, *Usov v. Lazar* for the proposition that the general rule set forth in *Winnick* applies to conversion and replevin; and (ii) to state that because the HoldCo Entities' superior rights to the Subject Collateral comes from contract that these claims are duplicative of Count 2 of the Counterclaims. *Id.*; 2013 WL 3199652, at *6-8 (S.D.N.Y. 2013).

The HoldCo Entities agree that their "superior right" to the Subject Collateral derives from the contract formed in the January Auction, and Wells has acknowledged that if a contract was formed in the January Auction that Wells would be obligated to deliver to the HoldCo Entities both the Subject Collateral and the proceeds received on the Subject Collateral since the January Auction. However, this does not change the fact that Wells is actually using the proceeds received on the Subject Collateral for its own benefit.[8] As discussed in the Wells MTD and the Counterclaims, Soloso is a CDO, and its only income is the proceeds received on its collateral, *e.g.* the Subject Collateral. CC, ¶¶ 15-17. Consequently, the only way for Soloso to pay Wells' trustee and attorneys' fees, including the cost of this litigation, is with proceeds received on the Collateral, including the Subject Collateral.

---

[8] In addition, on information and belief, the Zion Collateral was repurchased by its issuer in October 2016, and Wells is now holding the full value of the Zion Collateral in cash, which amount rightfully belongs to the HoldCo Entities.

As such, and although the HoldCo Entities are not alleging that Wells is a bad faith actor that will not deliver the Subject Collateral and the proceeds if this Court finds a contract was formed, the HoldCo Entities are asserting Count 4 (Conversion) and Count 5 (Replevin) in the alternative to protect themselves if Wells refuses to do so and/or if there is a ruling that a contract was not formed. In similar situations, courts have held that a claim for conversion accrues separately from the contract claim. *See Mosallem v. Matrix Int'l Logistics, Inc.*, 2004 U.S. Dist. LEXIS 625 (S.D.N.Y. 2004) (holding that defendant's demand for additional payments outside of the contract was sufficient grounds to allow a conversion claim to stand alongside a breach of contract claim with respect to defendant's failure to deliver the goods per the contract); *Fabry's S.r.L. v. IFT Int'l, Inc.*, 2003 U.S. Dist. LEXIS 5897 (S.D.N.Y. 2003) (holding that conversion claim stood when money due under contract for merchandise when contract party continued to collect payments without turning over both before and after termination of contract). As such, because Wells has not admitted that it is obligated by the contract formed in the January Auction to deliver both the Subject Collateral and the proceeds received thereon, the Wells MTD with respect to Counts 4 and 5 should be denied.

### III.    Request for Leave to Amend

Wells tries to have it both ways by arguing in the Wells MSJ that no contract exists between Wells and the HoldCo Entities, but that the existence of contract claims means the HoldCo Entities' tort claims should be dismissed. The Court necessarily will have to determine whether a contract exists in determining the pending cross-motions for summary judgment. Obviously, if the Court determines that no contract exists, then the contract claims should not bar the HoldCo Entities from asserting tort claims against Wells. Dismissal of the tort claims without prejudice (if dismissal at all is warranted) properly preserves the HoldCo Entities' abilities to plead appropriate tort claims after the Court determines the pending cross-motions for summary judgment. Accordingly, if for

16

any reason, this Court grants the Wells MTD and dismisses any or all counterclaims contained in the Counterclaims, then the dismissal should be without prejudice and the HoldCo Entities respectfully request leave to amend. *See* Fed. R.Civ.P. 15(a)(2); *see also Cortec Indus., Inc. v. Sum Holding LP*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead").

Based on the foregoing, the HoldCo Entities respectfully request entry of an order denying Wells' Motion to Dismiss or, in the alternative, an order allowing the HoldCo Entities' leave to replead their counterclaims.

Dated: New York, New York
        November 10, 2016                         Respectfully Submitted,

                                                 **BROWN MCCORMICK LLC**

                                                 **s/**
                                                 _____
                                                 Seth B. McCormick (SM-7384)
                                                 5315 N. Clark Street, Suite 601
                                                 Chicago, IL 60640
                                                 Phone: (917) 398-2343
                                                 Email: seth@brownlegal.net

                                                 -and-

                                                 **JEFFREY D. STERNKLAR LLC**
                                                 Jeffrey D. Sternklar
                                                 225 Franklin Street, 26th Floor
                                                 Boston, Massachusetts 02110
                                                 T: (617) 396-4515

                                                 *Attorneys for Defendants/Counterclaim Plaintiffs Holdco Asset Management, L.P.; HoldCo Opportunities Fund II, L.P. and Opportunities II Ltd.*

17